HILL, In re. See Case No. 8,443.
HILL, The. See Case No. 9,711.

## Case No. 6,487.

### HILL v. The AMELIA.

[6 Ben. 475.] [1]

District Court, S. D. New York. April, 1873.[2]

POSSESSION—EQUITABLE AND LEGAL TITLE TO A VESSEL.

T. built a yacht, called the A., for D., in payment for which he was to receive a sum of money and another yacht belonging to D. He received part of the money, but did not take possession of the other yacht. D. sold the A. to H., by bill of sale, with the knowledge of T., who was present when the A. was delivered to H., and was employed by H. to take care of her. On the next day, T. took off her sails, delivered them to a cart which H. had sent for them, and took them to H.'s store, and there stored them. Afterwards H. paid T. $5, on account of his care of the yacht. Some time after, on H. coming for the yacht, T. refused to give her up to him, claiming that she was his own. H. thereupon filed a libel of possession against the yacht and T., to recover possession of the yacht. No papers had been taken out at the custom house for the yacht till after the sale to H., when T. took out a license on his own certificate, as builder: Held, that the admiralty had no jurisdiction of the action.

[Cited in Neuberg v. Cargo of Mineral Phosphate, 15 Fed. 287; The G. Reusens, 23 Fed. 405; Rea v. The Eclipse, 135 U. S. 608, 10 Sup. Ct. 876.]

This was a libel filed by the libellant to recover possession of the yacht Amelia. The yacht was built by the respondent [J. N.] Towns, for one Doncourt. Towns was to be paid partly in money and partly by another yacht belonging to Doncourt. Doncourt paid him part of the money, and told him where to get the other yacht, and ordered it to be delivered to Towns, but Towns did not take it. Doncourt sold the Amelia to [Abraham] Hill, the libellant, giving him a bill of sale therefor. Before Hill paid any part of the price, the three men met at Hill's store, and Towns was informed of the proposed sale, and Hill inquired of him if there were any claims against the yacht, and was told there were none. The three then went to the yacht, where Doncourt, in Towns' presence, delivered her to Hill, and Hill employed Towns to take charge of the yacht for him The next day Hill sent a cart for the sails, which Towns took off and put on the cart, and, going with them to Hill's store, helped to store them there. Hill afterwards, on one occasion, on Towns' request, paid him five dollars, on account of his taking charge of the vessel. Hill thereafter went to get the yacht, when Town refused to deliver her up, claiming that she was his. Hill thereupon filed this libel to recover possession of her. No papers had been taken out at the custom house for the yacht, until after the sale to Hill, when Towns took out a license on his own certificate, as builder.

Benedict, Taft & Benedict, for libellant.
M. Jacobs, for respondent.

BLATCHFORD, District Judge. As the legal title to the vessel is in the respondent Towns, and has never passed from him, by a bill of sale, and as the libellant is seeking, therefore, in this suit, to enforce a merely equitable interest against such legal title, and a possession asserted by the respondent under it, I think the case is one of which a court of admiralty will not take cognizance, to deliver possession of the vessel to the libellants. A petitory suit, to try the title to a vessel, must be confined to, and based on, a legal title. Kellum v. Emerson [Case No. 7,669]; Kynoch v. The S. C. Ives [Id. 7,958]. Whatever rights the libellant has must be enforced in some other forum. The libel is dismissed, with costs.

[This decree was affirmed by the circuit court on appeal. Case No. 275. Pending the final decree, an application for an attachment for contempt against the claimant was denied (Id. 16,534), he having forcibly seized the vessel.]

HILL (BELL v.). See Case No. 1,252.

## Case No. 6,488.

### HILL v. BONAFFON et al.

[2 Wkly. Notes Cas. 356.]

Circuit Court, E. D. Pennsylvania. Oct. 2, 1876.

EQUITY PLEADING—MULTIFARIOUSNESS.

On demurrer, multifariousness of bill can only be taken advantage of by the party suffering therefrom.

Sur demurrer to bill. The bill set forth the following facts: In 1870, Hill mortgaged certain real estate to Bishop and Bonaffon, his joint creditors, as security for their debt. In 1874, Hill mortgaged a portion of the same property, by a deed on its face absolute, to Bishop, as security for another debt due by him to Hill alone. Bishop then took and still held possession. Both debts had been paid. Hill having subsequently been adjudicated a bankrupt, his assignee filed this bill against Bishop and Bonaffon, praying for satisfaction of the first mortgage, for an account, for a reconveyance by Bishop, and for a decree that the tenants of the property should attorn. To this bill, Bishop demurred on the ground of multifariousness.

G. T. Bispham, for demurrer: Bonaffon, the joint mortgagee of the first mortgage, has nothing to do with the dispute between the parties to the alleged second mortgage. Tasker v. Small, 3 Mylne & C. 63.

Cadwalader, District Judge: Has not complainant the right to have removed from his title the possible cloud resting upon it from

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 275.]

Bonaffon's connection with the first mortgage?

N. Sharpless, contra.

THE COURT (CADWALADER, District Judge) overruled the demurrer on the ground that multifariousness could only be taken advantage of on demurrer by the person suffering,—in this case, Bonaffon, not Bishop.

---

HILL (DEN v.). See Case No. 3,784.

---

## Case No. 6,489.
### HILL v. DUNKLEE.
[1 MacA. Pat. Cas. 475.]
Circuit Court, District of Columbia.   Jan., 1857.

PATENTS — INTERFERENCE PROCEEDINGS — COMPETENCY OF WITNESSES — DISCLAIMERS — PRIORITY OF INVENTION—LACHES.

[1. An inventor who is a party to the record, and who has a real interest in the case until a short time before he is to be examined as a witness, cannot become a competent witness by assigning his invention.]

[2. It is irregular and suspicious to call a witness twice to the same point, and cannot be allowed except for cause shown.]

[3. A disclaimer which, taken in the connection in which it occurs, is limited to the application in which it is made, does not prevent the inventor from claiming, in a subsequent application, the matter before disclaimed.]

[4. In the sense of the patent law of 1836 (5 Stat. 117), he is the first inventor who, by words, drawings, or otherwise, first makes known the principle of the invention, so that another would be able from such description to put it in use; and it is not necessary that the inventor should have put it into practical operation. Having done this much, he is entitled, as against a later inventor, to obtain a patent, provided he uses reasonable diligence in perfecting and maturing the invention and filing his application.]

[Cited in Lamson v. Martin, 159 Mass. 562, 35 N. E. 78.]

[5. A delay of about three years, during which the inventor was engaged in constructing a machine capable of producing a manufactured article, which was the subject of the invention, held not an unreasonable delay, such as would bar his right as against a subsequent inventor, who first made application for a patent.]

[This was an appeal by Samuel L. Hill, assignee of Anson A. Swift, from a decision, on interference, in favor of Henry Dunklee, assignor to Harold Kelsea, in respect to invention of an improved manufacture of sewing silk, twist, or cord.]

F. A. Brooks, for appellant.
Edmund Burke, for appellee.

MORSELL, Circuit Judge. The appellant filed his application and specification on the 15th of February, 1856, in which he thus describes his invention: "My invention consists in a new or improved manufacture of sewing silk, twist, or cord—it being made by interlooping a single strand, so as to lay together, and side by side, between each two adjacent interloopings of it, three straight portions of the strand. After this has been done, the whole is to be twisted together, so as to form one single line or cord." The claim is described in these words: "I do not claim a manufacture of silk twist, as made by laying and twisting together three different strands, but what I do claim is my improved manufacture of twist, sewing silk, or cord, as made by looping or interlooping a single strand, and subsequently twisting it into one line or cord." The specification itself is referred to for a particular description of the mode. The petition and specification of the appellee appears to have been filed in the patent office on the 17th of December, 1855, for identically the same invention, described in the same terms, and claimed by the appellee likewise, by a description in the same terms: and thus the only matter of difference between the parties is which of them was the first and original inventor; for the purpose of trying which before the commissioner he, according to the established rules of the patent office, appointed a day, and authorized the taking of depositions by each of the parties; upon the return of which depositions the said case was tried before the commissioner, according to the appointment aforesaid thereupon, and on the 9th of June, 1856, he awarded priority of invention to the said Kelsea, assignor to said Dunklee.

The appellant duly filed in the patent office his reasons of appeal from this decision, which are, in substance—First. That the said decision is at variance with what both parties understood the claim to be, i. e., a new manufacture and a new fabric. Second. Because the priority of invention was awarded to Kelsea, though he did not (till long after Swift) ever form the requisite loop by the use of the material necessary to produce sewing silk, viz., strands or threads of manufactured silk. Thirdly. Because Swift, in February, 1853, first applied the looping process to raw silk, and twisted it to produce sewing silk, and thereby first made the new manufacture, and showed the feasibility of making it in this way. Fourthly. Because Kelsea's testimony by deposition was admitted by the commissioner. Fifthly. Because a controlling influence was given to the testimony of Sullaway, the same having been discredited, it is believed, by other evidence, and having been inconsistent with itself and wholly unworthy of confidence. The sixth and last is a general reason, because against the evidence, &c. The original papers having been laid before me, the case was heard on written argument of the parties.

The fourth and fifth reasons, being in their nature preliminary, will be first considered.

Kelsea was certainly a real party in interest to the proceedings and record in this case until a very short time before he was examined as a witness. The rule of law applicable has been several times on former occa-